UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JULIO LAMBOY RUIZ**,<br><br>                  Plaintiff,<br><br>        v.<br><br>**MILLENNIUM SQUARE RESIDENTIAL ASSOCIATION**, *et al.*,<br><br>                  Defendants. | Case No. 1:19-cv-03765 (TNM) |

### MEMORANDUM OPINION

Last year, Julio Lamboy Ruiz discovered significant water damage inside the walls of his condominium unit. This damage, he believes, was caused by the building's chilled water equipment and pipes, which the Millennium Square Condominium Associations[1] ("Millennium Defendants") and the site manager—Ritz-Carlton Hotel Company ("Ritz-Carlton" or "Hotel")—improperly installed, repaired, or maintained. He sued the Millennium Defendants and Ritz-Carlton seeking compensation for damage to his property.

Defendants moved to dismiss or compel arbitration. Ruiz now admits that his claims against the Millennium Defendants should go to arbitration, though he urges this Court to stay rather than dismiss the case. Still, he maintains that he has stated a claim for negligence against Ritz-Carlton and he insists that the Court should not compel arbitration of that claim.

The Court agrees with Ruiz that his Amended Complaint has stated a valid claim for negligence. But because this negligence claim is intertwined with Ruiz's claims against the

---

[1] The Millennium Square Condominium Associations include Millennium Square Residential Association, Millennium Square Unit Owners Association, and Millennium Square Commercial Association. *See* Am. Compl. 1, ECF No. 18.

Millennium Defendants, the Court will compel Ruiz to arbitrate this claim with Ritz-Carlton. While arbitration is pending, the Court will stay proceedings against all Defendants.

## I. BACKGROUND

Ruiz owns a condominium unit within the Millennium Square condominium project ("Condominium") in Washington, D.C.  *See* Am. Compl. ¶¶ 2–3, ECF No. 18.  The Condominium is a "mixed-use" condominium with residential units, like the one owned by Ruiz, and commercial units, operated by Ritz-Carlton.  *Id.* ¶¶ 5, 10.

The top floor of Ruiz's unit is adjacent to the Condominium's mechanical facilities room.  *Id.* ¶ 14.  Ruiz alleges that last year, some chilled water equipment in the mechanical room entered a "blowdown or flushing mode" which caused the room's floor drain to overflow.  *Id.* ¶ 15.  This overflow caused about 20–30 gallons of water to infiltrate Ruiz's unit.  *Id.*

A few days later, Ruiz discovered mold and water in his unit.  *Id.* ¶ 16.  Over the next two months, he had several portions of the ceilings and walls opened and discovered that the insulation surrounding the pipes was "heavily waterlogged," caused by "excessive condensation of the pipes."  *Id.* ¶¶ 17–20 (capitalization altered).

The water caused more than $575,000 of damage to Ruiz's property.  *Id.* ¶ 29.  Ruiz claims the Millennium Defendants and Ritz-Carlton caused these damages through the "erroneous operation of the chilled water system . . . and/or [] faulty insulation and/or the faulty installation and/or maintenance of the insulation and/or piping."  *Id.* ¶ 21.

Ruiz suggests that the Condominium Bylaws obligated the Millennium Defendants to maintain the chilled water system, insulation, and pipes.  The Bylaws "govern the respective rights and obligations" between Ruiz and the Millennium Defendants.  *Id.* ¶ 22.  And they allocate responsibilities for the "maintenance, repair and replacement" of the Condominium's

"Common Elements." *Id.* ¶ 23. According to the Bylaws, the Unit Owners Association is responsible for the "General Common Elements," the Residential Association is responsible for the "Residential Limited Common Elements," and the Commercial Association is responsible for the "Commercial Limited Common Elements." *Id.* "Despite investigation," Ruiz was unable to determine to what category of elements the water chilling equipment and pipes belong. *Id.* ¶ 26. And Defendants' representatives have provided Ruiz with "conflicting information . . . regarding the operation, control, maintenance, and/or responsibilities of the facilities and instrumentality at issue in this litigation[.]" *Id.* ¶ 25.

Ruiz also faults Ritz-Carlton. He alleges that it "assumed certain maintenance and repair responsibilities" that "obligate the Hotel to maintain, repair and replace the facilities and instrumentalities at issue in this litigation including, but not limited to, the Pipes." *Id.* ¶ 27. Ritz-Carlton and the Commercial Association have a Management Agreement that gives the Hotel the responsibility to "cause the Common Elements of the Condominium to be repaired, restored, cleaned, added to, improved, altered, replaced or maintained in such condition as may be required by . . . the Bylaws."[2] *See* Ritz-Carlton Mot. to Dismiss 13 ("Ritz Mot."), ECF No. 22-2; Management Agreement 4, Ritz Mot., Ex. A, ECF No. 22-3.[3]

---

[2] Although Ruiz did not attach the Management Agreement to his Amended Complaint, the Court may consider the contract to evaluate Ritz-Carlton's Motion to Dismiss since Ruiz referenced and relied on this contract in his Amended Complaint. *See infra* III.A.1; *Sierra v. Hayden*, 254 F. Supp. 3d 230, 236 (D.D.C. 2017) ("In evaluating a Rule 12(b)(6) motion to dismiss, a court may consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the parties." (cleaned up)). Ruiz does not identify the Management Agreement by name, but he alleges that Ritz-Carlton assumed maintenance responsibilities for the Condominium. Am. Compl. ¶ 27. This is enough to incorporate the document. *See Sierra*, 254 F. Supp. 3d at 236 ("A document need not be mentioned by name to be considered 'referred to' or 'incorporated by reference' into the complaint." (cleaned up)).

[3] All page citations are to the page numbers generated by the Court's CM/ECF system.

Ruiz sued the Millennium Defendants for violating the D.C. Consumer Protection Procedures Act, breach of the bylaws, breach of the implied duty of good faith and fair dealing, and negligence. Am. Compl. ¶¶ 31–53. He also sued the Hotel for negligence. *Id.* ¶¶ 48–53.

The Millennium Defendants moved to compel arbitration or, in the alternative, to dismiss. *See* Millennium Mot. to Compel, or, Mot. to Dismiss ("Millennium Mot."), ECF No. 19-1. In response, Ruiz admitted that arbitration is required for all claims against these Defendants.[4] *See* Ruiz Resp. to Millennium's Mot. to Compel 1 ("Ruiz Millennium Resp."), ECF No. 24. Ritz-Carlton also moved to dismiss or, in the alternative, to compel arbitration. *See* Ritz Mot. at 4. These motions are ripe for the Court's review.

The Court has diversity jurisdiction over this case, since Ruiz is a citizen of North Carolina, Millennium Defendants are incorporated in the District of Columbia, and Ritz-Carlton is a Delaware limited liability company with its principal place of business in Maryland. *See* Am. Compl. ¶¶ 1–11; 28 U.S.C. § 1332. The amount in controversy exceeds $75,000. Am. Compl. ¶¶ 11, 29.

## II. STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

---

[4] Ruiz agreed that his claims against the Millennium Defendants should go to arbitration if the Millennium Defendants modified the arbitration agreement to permit a jointly-approved arbitrator. Ruiz Millennium Resp. at 3. The Millennium Defendants agree that this term should be modified. Millennium Reply 3, ECF No. 26. So the Court will allow Ruiz and Millennium Defendants to jointly approve an arbitrator. *See* D.C. Code § 42-1902.08(a); *Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77, 83 (D.C. Cir. 2005).

4

In assessing plausibility, the Court may consider only "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [it] may take judicial notice." *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017) (internal quotations omitted). And it must generally "accept as true all of the complaint's factual allegations and draw all reasonable inferences in favor of the plaintiff[]." *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 272 (D.C. Cir. 2018). But a complaint containing only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" and factually void legal conclusions cannot withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678–79.

Courts evaluate motions to compel arbitration under Federal Rule of Civil Procedure 56(c). *See Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, 531 F.3d 863, 865 (D.C. Cir. 2008). The party seeking to compel arbitration must first present "evidence sufficient to demonstrate an enforceable agreement to arbitrate." *Hill v. Wackenhut Servs. Int'l*, 865 F. Supp. 2d 84, 89 (D.D.C. 2012) (internal quotations omitted). Then the burden shifts to the non-moving party "to raise a genuine issue of material fact as to the making of the agreement, using evidence comparable to that identified in Fed. R. Civ. P. 56." *Id.* (cleaned up). "The Court will compel arbitration if the pleadings and the evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fox v. Comput. World Servs. Corp.*, 920 F. Supp. 2d 90, 96 (D.D.C. 2013) (cleaned up).

### III. ANALYSIS

#### A. Ritz-Carlton's Motion to Dismiss

To plead negligence against the Hotel, Ruiz must allege facts showing that (1) Ritz-Carlton owed a duty to him; (2) it breached that duty; and (3) Ruiz's injury was proximately

5

caused by the breach. *See Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 793 (D.C. 2011). Ritz-Carlton urges three justifications for dismissal. First, it suggests that Ruiz failed to plead that it owed Ruiz any duty. *See* Ritz Mot. at 9–16. Second, Ritz-Carlton challenges Ruiz's pleading of breach. *Id*. at 11. Finally, it claims that Ruiz's negligence claim is barred by the economic loss doctrine. *Id*. at 16–17.

### 1. Ruiz pleaded that Ritz-Carlton owed him a duty of care.

Ritz-Carlton suggests that Ruiz failed to sufficiently plead that it owed him a duty, both because Ruiz "fails to characterize the specific legal duty owed to him" and because it "owes him no duty as a matter of law." Ritz Mot. at 10–12. The Court disagrees on both fronts.

To begin, Ruiz does characterize Ritz-Carlton's legal duty in his Amended Complaint. It alleges that the Hotel "assumed certain maintenance and repair responsibilities that it knew or should have known would directly impact the Plaintiff which such assumed responsibilities obligate the Hotel to maintain, repair and replace the facilities and instrumentalities at issue in this litigation including, but not limited to, the Pipes." Am. Compl. ¶ 27. In other words, the Amended Complaint alleges that Ritz-Carlton voluntarily undertook maintenance and repair responsibilities for the pipes and other chilled water equipment. These responsibilities, Ruiz insists, imposed a duty on Ritz-Carlton to exercise reasonable care when repairing and maintaining the chilled water equipment. *See* Ruiz Opp'n to Ritz-Carlton's Mot. to Dismiss 11–12 ("Ruiz Ritz Opp'n"), ECF No. 23.

Though Ruiz does not explain in detail how the Hotel assumed certain maintenance responsibilities or what those responsibilities covered, Ruiz has pleaded facts, not mere legal conclusions. *See The Scowcroft Grp., Inc. v. Toreador Res. Corp.*, 666 F. Supp. 2d 39, 42 (D.D.C. 2009) ("Although a complaint does not need detailed factual allegations, a plaintiff's

6

obligation to provide the grounds of his entitlement to relief 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). Ruiz's Amended Complaint does not specifically say that the Millennium Defendants and Ritz-Carlton had a Management Agreement, but it alludes to that agreement.[5] Am. Compl. ¶ 27. And, though he does not quote the exact language from the Management Agreement, he alleges that those maintenance responsibilities obligated the Hotel to maintain and repair the Condominium's chilled water instrumentalities (including the pipes).[6] *Id.* Ruiz has thus pleaded enough facts to allege that Ritz-Carlton owed him a duty of care based on the Management Agreement.

A separate question is whether the Hotel's assumption of maintenance duties—through the Management Agreement—imposes a duty on the Hotel to act with reasonable care toward Ruiz. Ritz-Carlton maintains that it cannot.

First, Ritz-Carlton insists that the Management Agreement, as a contract, could not be the basis of a tortious duty. Ritz Mot. at 12. Within the District, it notes, generally a "tort must exist in its own right independent of the contract" and "any duty upon which the tort is based must flow from considerations *other than the contractual relationship*." *See id.* (quoting *Choharis v. State Farm Fire & Cas. Co.*, 961 A.2d 1080, 1089 (D.C. 2008)) (emphasis added).

---

[5] Indeed, Ritz-Carlton acknowledged that Ruiz's Amended Complaint incorporated by reference the Management Agreement and attached the agreement to its Motion to Dismiss. *See* Ritz Mot. at 12 n.3.

[6] The attached Management Agreement does not undermine this allegation. Ruiz's Amended Complaint seems to allege that the chilled water equipment and pipes are "common elements" of some kind—though he could not determine whether the equipment was "a General Common Element, a Residential Limited Common Element or a Commercial Limited Common Element." Am. Compl. ¶ 26. And, as Ritz-Carlton itself acknowledges, the attached Management Agreement requires the Hotel to "cause the *Common Elements* of the Condominium to be *repaired*, restored, cleaned, added to, improved, altered, *replaced or maintained* in such condition as may be required by the Declaration and Bylaws[.]" Ritz Mot. at 13 (quoting Management Agreement at 4) (emphasis added).

7

True enough. That may be so if there were a "contractual relationship" between Ritz-Carlton and Ruiz. When a defendant has breached a contract with a plaintiff, courts in the District generally do not permit the plaintiff to sue in both tort and contract because doing so is "duplicative and unsustainable." *Himmelstein v. Comcast of the Dist., LLC*, 908 F. Supp. 2d 49, 55 (D.D.C. 2012).

But the Hotel admits it "has no contractual relationship with Plaintiff." Ritz Mot. at 12. Instead, its contract is with Millennium Square Commercial Association. *Id.* And this contract may create certain duties in tort to affected third-parties. *See Presley v. Commer. Moving & Rigging, Inc.*, 25 A.3d 873, 888 (D.C. 2011) ("In the absence of contractual privity with an unrelated third party, whether a party should have foreseen that its contractual undertaking was necessary for the protection of the third party is important."); *see also Vantage Commod. Fin. Servs. I, LLC v. Assured Risk Transf. PCC, LLC*, 321 F. Supp. 3d 49, 64 (D.D.C. 2018) ("Defendants note that these undertakings were contractual obligations to [the signatory] but do not explain why they cannot also be tort obligations to [the non-signatory].").

The D.C. Court of Appeals has turned to Restatement (Second) of Torts § 324A, to determine whether a party performing services under a contract assumes a tortious duty to an independent third party. *See Presley*, 25 A.3d at 889. Section 324A recognizes that:

> "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>    (a) his failure to exercise reasonable care increases the risk of such harm, or
>    (b) he has undertaken to perform a duty owed by the other to the third person, or
>    (c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

§ 324A, Restatement (Second) of Torts.

Ritz-Carlton's alleged duty arises under the scenario envisioned by Section 324A(b). That is, Ruiz's Amended Complaint alleges that the Millennium Defendants owed him a duty to maintain and repair the chilled water equipment under the Bylaws. *See* Am. Compl. ¶¶ 23, 40, 49. And, he suggests, Ritz-Carlton assumed that duty through its contract with the Commercial Association. *Id.* ¶ 27. Further, since Ritz-Carlton undertook maintenance responsibilities for the residential sector of the Condominium, it should have foreseen that these responsibilities were "necessary for the protection" of the residential unit owners or their property. Since Ruiz alleged Ritz-Carlton undertook "to render services to [Millennium] 'which [it] should recognize as necessary for the protection of [Ruiz] or his things,'" Ruiz has pleaded that the Hotel owed "a duty of reasonable care to [him]." *See Vantage*, 321 F. Supp. 3d at 64.

To be sure, Ruiz's briefing on this issue is not pellucid. There, he insists that the Hotel's duty is "independent of the Condominium Management Agreement" and of the Bylaws.[7] *See* Ruiz Ritz Opp'n at 8, 10. Indeed, his brief seems to suggest that the Hotel undertook this duty by voluntarily beginning work on equipment. *Id.* at 11. He likens this assumption of duty to a landlord who "generally owes no duty to his tenants to renovate the leased premises," but owes a duty to exercise reasonable care "once he begins to renovate and improve the property." *Id.* (quoting *Towers Tenant Ass'n, Inc. v. Towers Ltd. P'ship*, 563 F. Supp. 566, 570 (D.D.C. 1983)). In the same way, he concludes, "[o]nce the Hotel began its work, the Hotel owed a duty to the residents of the Condominium to exercise reasonable care in the performance of those activities." *Id.* at 11–12.

---

[7] Despite his assertion that the Hotel's duty is independent of the Management Agreement and Bylaws, Ruiz repeats in this same section of the brief that Ritz-Carlton had a duty of care because it "agreed to repair and maintain the chilled water equipment including the insulation and Pipes." Ruiz Ritz Opp'n at 11. And he cites cases that conclude that one "can be liable to a third party if his failure to exercise reasonable care increases the risk of harm or if he has undertaken to perform a duty that the person he is serving owed to the third party." *Id*. (quoting *Vantage*, 321 F. Supp. at 64).

But where in the Amended Complaint does Ruiz allege that Ritz-Carlton "began work" on the chilled water equipment? The Complaint states only that Ritz-Carlton assumed maintenance responsibilities and had to repair and maintain the chilled water equipment, presumably because of the Management Agreement. *See* Am. Compl. ¶ 27; *see also* Ruiz Ritz Opp'n at 11 ("[T]he Hotel *agreed* to repair and maintain the chilled water equipment including the insulation and Pipes." (emphasis added)). No facts in the Amended Complaint support Ruiz's new theory that the Hotel "began its work" maintaining and repairing the equipment and then failed to "exercise reasonable care in the performance of those activities." *Id.*

So, though Ruiz sufficiently pleaded that the Hotel owed a duty to him because of the Management Agreement and Bylaws, Ruiz failed to allege facts that would establish an independent duty based on the Hotel's work on the equipment.

Next, Ritz-Carlton argues that even if it would normally owe a duty to Ruiz, the exculpatory clause in its Management Agreement absolves it of this duty. *See* Ritz Mot. at 12–15. The Management Agreement—under the heading "Indemnification and Reimbursement"—states that the Hotel:

> "assumes no liability whatsoever for . . . any and all claims or damages or injuries to persons or property by reason of any cause whatsoever, either in or about the Condominium, or any Residential Unit when and during the time that Manager is providing management services set forth in this Agreement . . . unless such claim results from the intentional or willful misconduct or acts amounting to fraud of Manager . . . ."

Management Agreement at 13–14; *see* Ritz Mot. at 13–14.

This language, of course, may prevent the *Commercial Association* from holding the Hotel liable for any damage to the Condominium or residential units. But that's not this case. Ritz-Carlton cites no precedent suggesting that someone like Ruiz—who is not a party to the contract—is bound by that contract's exculpatory clause.

10

Indeed, caselaw suggests the opposite.  Consider *Miles v. Naval Aviation Museum Foundation, Inc.*, 289 F.3d 715 (11th Cir. 2002).  There, the plaintiff sued the U.S. Government when one of the nose gear wheel valves of a plane formerly owned by the Government broke off and crushed the plaintiff's leg.  *Id*. at 716–17.  The plaintiff claimed that before the plane was sold, the Government negligently performed mandatory inspections on the plane and negligently failed to train and certify the mechanics testing the plane.  *Id*. at 717–18.

The contract of sale included an exculpatory clause where the buyer agreed that the Government had no liability for any injury caused by the plane.  *Id*. at 717.  In litigation, the Government pointed to this clause, suggesting that it "relieve[d] it from any previous negligent inspections."  *Id*. at 720.  The court disagreed.  *Id*.  The clause might require the buyer to indemnify the Government.  *Id*.  But this clause did not affect the plaintiff's claim because "he was not a party to the contract."  *Id*.; *see also Air Prod. & Chems., Inc. v. Eaton Metal Prod. Co.*, No. 02-cv-1277, 2003 WL 22133839, at *20 (E.D. Pa. Aug. 22, 2003) ("[Defendants] may not use the exculpatory clause as a defense to [Plaintiff's] negligence claim for the simple reason that exculpatory clauses may only be asserted against contracting parties.").

So too here.  The exculpatory clause in the contract between the Commercial Association and Ritz-Carlton cannot bar Ruiz's case since "[i]t goes without saying that a contract cannot bind a nonparty."  *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002).  The clause may require Millennium to indemnify Ritz-Carlton, but it can do no more.

### 2. Ruiz adequately pleaded breach of Ritz-Carlton's duty.

Ritz-Carlton also suggests that Ruiz failed to plead enough facts to establish a breach of its duty.  Again, the Court disagrees.

Ruiz plausibly alleged that Ritz-Carlton owed a duty to maintain the chilled water equipment because of its Management Agreement with the Millennium Square Commercial Association.  *See supra* III.A.1.  And Ruiz alleged that Ritz-Carlton failed to maintain the equipment.  Am. Compl. ¶ 28.  Since Ruiz alleges that the Hotel breached its duty when it failed to act when it was obligated to, there are no other "specific acts" for Ruiz to allege.  *See, e.g.*, *Bankers Stand. Ins. Co. v. All-Pro Servs., Inc.*, 19-cv-1052, 2020 WL 1695086, at *3 (D.D.C. Apr. 7, 2020) (finding that the plaintiff alleged enough facts to specify the negligent act when the complaint alleged the defendant "'fail[ed] to ensure the safe operation of the subject boiler and its associated components,' and 'fail[ed] to hire competent agents, workmen and/or employees to service, maintain, clean and/or inspect the subject boiler'").  So Ruiz's negligence claim will not be dismissed for a failure to state a breach of duty.

### 3. Ruiz's negligence claim is not barred by the economic loss doctrine.

Finally, Ritz-Carlton urges that the economic loss doctrine bars Ruiz's negligence claim.  But because Ruiz's Amended Complaint seeks compensatory damages for property loss, not pure economic loss, this doctrine does not apply.

Under the economic loss doctrine, "purely economic losses" are not recoverable in tort unless a "special relationship exists" between the plaintiff and defendant.  *Aguilar v. RP MRL Wash. Harbor*, 98 A.3d 979, 986 (D.C. 2014).  This means that plaintiffs are barred from seeking recovery of lost profits or lost wages—unconnected to any injury to body or property—in a negligence action.  *Id*. at 982–83.

Yet Ruiz insists—and Ritz-Carlton apparently concedes—that he has only alleged property damages.  Ruiz Ritz Opp'n at 9; Ritz Reply 4, ECF No. 25 ("By Plaintiff's own admission, he alleges property damages, not pecuniary loss.").  Ritz-Carlton never tries to show

12

how the damages Ruiz alleges are "purely economic damages." Instead, its brief concentrates on whether Ruiz falls under the "special relationship" exception. *See* Ritz Mot. at 16–17. But the Court only considers this exception if the economic loss doctrine applies in the first place. Since Ritz-Carlton does not explain how the economic loss doctrine bars Ruiz's claim, the Court will not dismiss on this basis.

### 4. Ruiz's claim for attorneys' fees will be dismissed.

But the Court will grant Ritz-Carlton's motion to dismiss Ruiz's claim for attorneys' fees. Ritz Mot. at 17. In the District of Columbia, "a plaintiff litigating a civil action must bear his own attorney's fees and expenses absent a contractual or statutory basis for liability," unless he falls within a small set of narrow exceptions such as bad faith. *Safeway Stores, Inc. v. Chamberlain Protective Servs., Inc.*, 451 A.2d 66, 68–69 (D.C. 1982). As Ritz-Carlton notes, Ruiz has "not alleged that there is any statutory, contractual, or common-law exception that would entitle him to recover attorneys' fees[.]" Ritz Mot. at 17–18. Indeed, Ruiz does not respond at all to the Hotel's motion to dismiss the claim for attorneys' fees. The Court therefore treats this argument as conceded and will dismiss Ruiz's claim for attorneys' fees against Ritz-Carlton. *See* D.D.C. LCvR 7(b); *Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014) ("[I]f a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded.").

### B. Ritz-Carlton's Motion to Compel Arbitration

In the alternative to its Motion to Dismiss, Ritz-Carlton urges the Court to compel Ruiz to arbitrate his claims, based on the doctrine of estoppel. *See* Ritz Mot. at 19. Since Ritz-Carlton and Ruiz are not in contractual privity, no written agreement binds Ruiz to arbitrate his claims against the Hotel. Yet Ruiz admits that his claims against the *Millennium Defendants* are subject

to arbitration, according to the Condominium Bylaws. *See* Ruiz Millennium Resp. at 1. Since Ruiz's negligence claim against Ritz-Carlton is "intertwined" with his claims against the Millennium Defendants, the Court will grant Ritz-Carlton's Motion to Compel Arbitration.

Under the doctrine of estoppel, a "signatory to an arbitration agreement may be compelled to arbitrate with a non-signatory when the non-signatory is seeking to resolve issues that are intertwined with an agreement that the signatory has signed." *Fox v. Comput. World Servs. Corp.*, 920 F. Supp. 2d 90, 103 (D.D.C. 2013). There is no express test for determining whether issues are sufficiently "intertwined." Yet other judges in this District have found estoppel to be appropriate where "there would be no claim against the nonsignatory if the underlying contract never existed[.]" *Riley v. BMO Harris Bank, N.A.*, 61 F. Supp. 3d 92, 99 (D.D.C. 2014); *see also Kelleher v. Dream Catcher, LLC*, 278 F. Supp. 3d 221, 225–26 (D.D.C. 2017) (finding a non-signatory's claims "'intertwined' with those against the signatory to the contract" when the plaintiff's claims against the non-signatory "exist only because of the Contract").

Take *Riley*. There, the plaintiff sued a group of banks for their "participation in a scheme to . . . collect unlawful debts[.]" *Riley*, 61 F. Supp. 3d at 94. The plaintiff obtained the loans from a separate group of lenders and her agreements with those lenders contained arbitration clauses. *Id.* at 95. Though the banks were not parties to those contracts, they sought to compel arbitration based on the doctrine of estoppel. *Id.* at 98–99.

The court granted the motion, finding that the plaintiff's claims against the banks were "intertwined" with the claims subject to arbitration. *Id.* at 100–01. The relevant question, the court explained, was "whether the agreements need[ed] to be 'relied upon' or [were] 'integral' to establishing the violation alleged by Plaintiff." *Id.* at 100. There, the plaintiff referenced the

loan agreements throughout her complaint. *Id.* at 95.  And each of her claims against the banks "relie[d] on the allegation that Plaintiff's loan agreements were invalid[.]" *Id.* at 99.  Since "Plaintiff's factual allegations indicate[d] that her claims [arose] from" the loan agreements, the court found that her claims against the banks were "thus intertwined with the loan agreements containing the arbitration provision." *Id.* at 100.

Ruiz's claim against Ritz-Carlton is similarly intertwined with the claims against the Millennium Defendants—with whom he agreed to arbitration in the Condominium Bylaws. Ritz-Carlton's alleged duty to Ruiz arises from the Hotel's maintenance responsibilities under the Management Agreement with the Commercial Association.  *See supra* at III.A.1.  Through the Management Agreement, the Commercial Association assigned some of its maintenance and repair responsibilities to Ritz-Carlton.  *See* Management Agreement at 4.  Of course, the Commercial Association could only assign maintenance and repair responsibilities to Ritz-Carlton that it itself had.

And Ruiz's Amended Complaint suggests that the Millennium Defendants did have these maintenance responsibilities, under the Bylaws.  Ruiz alleges that, among other things, the Millennium Defendants had a contractual duty under the Bylaws to "maintain, repair and replace the facilities and instrumentalities at issue in this litigation including, but not limited to, the Pipes." *See* Am. Compl. ¶ 40.  He also alleges that the Millennium Defendants breached this contractual duty by "failing to maintain, repair and replace the facilities and instrumentalities under their respective control in a manner consistent with the Bylaws." *Id.* ¶ 41.

An arbitrator will determine whether the Millennium Defendants, in fact, had this duty and breached it.  This finding is "integral" to whether Ritz-Carlton also owed a duty to Ruiz. Ritz-Carlton's duty arose only because it had "undertaken to perform a duty owed by the other to

15

the third person." *See* § 324A(b), Restatement (Second) of Torts.  If the Millennium Defendants owed no duty to Ruiz to repair or maintain the equipment, then neither could Ritz-Carlton.  So while Ruiz is not suing Ritz-Carlton for breach of the Bylaws, interpretation of the Bylaws and resolution of Ruiz's claim for breach of contract against the Millennium Defendants are integral to determining whether Ritz-Carlton is liable for negligence.  *Accord Riley*, 61 F. Supp. 3d at 100 ("[F]or a court to find Plaintiff's claims 'intertwined' with the agreements containing the arbitration provision, Plaintiff need not claim that Defendants breached those agreements themselves; instead, the relevant question is whether the agreements need to be 'relied upon' or are 'integral' to establishing the violation alleged by Plaintiff.").

But even if Ruiz's claim against Ritz-Carlton did not depend on the Bylaws, the claims against Ritz-Carlton and the Millennium Defendants are still "intertwined" for a separate reason: Ruiz asserts the same claim for negligence against all Defendants.  *See Sakyi v. Estee Lauder Co., Inc.*, 308 F. Supp. 3d 366, 385 (D.D.C. 2018) (compelling arbitration on estoppel grounds where "the plaintiff assert[ed] the exact same claims, based on the same operative set of facts" against the non-signatory defendant as he had against the signatory defendant (internal quotation omitted)).

Count IV—the negligence claim—is asserted "[a]gainst all Defendants."  Am. Compl. at 9.  Ruiz alleges that "Defendants, individually and collectively, owed a duty to maintain, repair and replace the facilities and instrumentalities at issue" and that they "individual[ly] and collectively" breached that duty.[8]  *Id.* ¶¶ 49, 51.  More, the negligence claim against each Defendant is "based on the same operative set of facts."  *Id.* ¶¶ 13–30.  That is, Ruiz alleges that

---

[8] The only legal distinction between Ruiz's negligence claim against Defendants is the basis for the legal duty: arising from the Bylaws for the Millennium Defendants and the Management Agreement for Ritz-Carlton.  Am. Compl. ¶ 50.

16

the Condominium's chilled water equipment and pipes damaged his unit and that the Millennium Defendants and Ritz-Carlton caused that damage by failing to maintain or repair the equipment. And Ruiz seeks the same amount in monetary damages—$575,525.64—from all Defendants based on the property damage to his unit. *Id.* at 6–9.

Because Ruiz seeks to hold Defendants "individually and collectively" responsible for the same damage to his unit caused by the same negligent acts relying on the same underlying facts, Ruiz's claim against Ritz-Carlton is "intertwined" with his case against the Millennium Defendants. *Accord Fox*, 920 F. Supp. 2d at 103–04 (compelling plaintiff to arbitrate claims with a non-signatory to an arbitration agreement on estoppel grounds because plaintiff's "claims against all defendants [were] identical"). The Court will, thus, compel arbitration on Ruiz's negligence claim against Ritz-Carlton.

### C. The Court Will Stay the Case Pending Arbitration.

Ruiz and the Millennium Defendants agree that all claims against the Millennium Defendants are subject to arbitration. Ruiz Millennium Resp. at 1; Millennium Reply 3, ECF No. 26. They disagree, though, whether the Court should stay the case pending arbitration or dismiss the claims. Ruiz Millennium Resp. at 5; Millennium Reply at 3.

The Courts of Appeals are also divided on this issue.[9] The question arises from a conflict in how to interpret Section 3 of the Federal Arbitration Act ("FAA"):

> "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall* on application of one of the parties *stay the trial of the action* until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

---

[9] The D.C. Circuit has not opined on it. *See Ryan v. BuckleySandler, LLP*, 69 F. Supp. 3d 140, 147 (D.D.C. 2014).

17

9 U.S.C. § 3 (emphasis added).

On its face, Section 3 appears to leave the Court with only one option when it determines that an issue in a suit is "referable to arbitration": "on application of one of the parties," the Court "shall . . . stay the trial of the action." *Id*. And other courts have accepted this reading. The Third Circuit, for instance, has held that courts must stay—rather than dismiss—the action while the claims are in arbitration. *See Lloyd v. Hovensa, LLC*, 369 F.3d 263, 269 (3d Cir. 2004). It reasoned that "[t]he statute clearly states, without exception, that whenever suit is brought on an arbitrable claim, the Court 'shall' upon application stay the litigation until arbitration has been concluded." *Id*. at 269. The Seventh and Tenth Circuits agree. *See Cont'l Cas. Co. v. Am. Nat. Ins. Co*., 417 F.3d 727, 732 n.7 (7th Cir. 2005) ("[T]he proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings pending arbitration rather than to dismiss outright."); *Adair Bus Sales, Inc. v. Blue Bird Corp*., 25 F.3d 953, 955 (10th Cir. 1994) (holding that under Section 3, the "proper course" of action for the district court would be to "stay the action pending arbitration").

Yet the Millennium Defendants urge the Court to rely on cases that deviate from the plain language of the statute. *See* Millennium Reply at 3–4. These cases ultimately determine that Congress could not have meant for courts to retain cases when all issues in the lawsuit are arbitrable. The Fourth Circuit, for example, maneuvered around Section 3's plain language, holding that "*[n]otwithstanding the terms of § 3* . . . dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc*., 252 F.3d 707, 709–10 (4th Cir. 2001) (emphasis added). The Fifth Circuit, likewise, leaned on congressional intent, reasoning that Section 3 "was not intended to limit dismissal of a case in the proper circumstances." *Alford v. Dean Witter Reynolds, Inc*., 975 F.2d 1161, 1164 (5th Cir.

1992). There would be no reason to stay the case when all claims are subject to arbitration, the Fifth Circuit concluded, because "retaining jurisdiction and staying the action will serve no purpose." *Id.* (quoting *Sea-Land Serv., Inc. v. Sea-Land of P.R., Inc.*, 636 F. Supp. 750, 757 (D.P.R. 1986)).

The Ninth Circuit, agreeing with the Fourth and Fifth Circuits, has also provided little analysis to support its interpretation of Section 3. In *Sparling v. Hoffman Construction Co.*, the court dismissed the plaintiff's claims based exclusively on its reading of an earlier Ninth Circuit case. *See* 864 F.2d 635, 638 (9th Cir. 1988). It read its precedent to say that Section 3 "gives a court authority, upon application by one of the parties, to grant a stay pending arbitration, but does not preclude summary judgment when all claims are barred by an arbitration clause." *Id.* at 638 (citing *Martin Marietta Alum'm, Inc. v. Gen. Elec. Co.*, 586 F.2d 143, 147 (9th Cir. 1978)). Yet the court in *Martin Marietta* declined to issue a stay because the parties did not apply for a stay and "a request for a stay is not mandatory" under Section 3. 586 F.2d at 147. The *Sparling* Court did not acknowledge this reasoning or make any independent effort to grapple with Section 3's statutory language.

But "even the most formidable argument concerning the statute's purposes could not overcome" a statute's clear text. *See Kloeckner v. Solis*, 568 U.S. 41, 55 n.4 (2012). And these cases' reasons for diverging from the plain language of the text are not "formidable." The Millennium Defendants fail to explain why the Court should not read this language to mean that the stay is mandatory. This Court thus will adhere to the plain language of Section 3. Once a party moves for a stay, Section 3 provides no menu of options. It dictates that the Court "shall . . . stay the trial of the action[.]" 9 U.S.C. § 3. The Court will do so here.

Neither Ritz-Carlton nor Ruiz address whether the Court should likewise impose a stay or dismiss Ruiz's claim against the Hotel.  Section 3's mandate to stay litigation applies to "any issue referable to arbitration *under an agreement in writing for such arbitration*[.]"  *Id.* (emphasis added).  Here, the Court is ordering arbitration with Ritz-Carlton based on the doctrine of estoppel, not because of "an agreement in writing."  *See supra* III.B.  So the Court need not stay this portion of the case.  *See Toledano v. O'Connor*, 501 F. Supp. 2d 127, 153 (D.D.C. 2007) (finding that a non-signatory to an arbitration agreement "may not succeed in obtaining a mandatory stay pursuant to the FAA based on equitable estoppel grounds").

Still, because neither party requests that the claim against Ritz-Carlton be dismissed pending arbitration and because the related claims against the Millennium Defendants will be stayed, the Court will exercise its discretion to stay the case against Ritz-Carlton as well.  *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.").  This will allow the related claims to move along the same track.

### IV.  CONCLUSION

For these reasons, Ritz-Carlton's Motion to Dismiss will be granted in part and denied in part.  The Court will dismiss Ruiz's claim for attorneys' fees against Ritz-Carlton but will not dismiss Count IV of the Amended Complaint.  The Millennium Defendants' and Ritz-Carlton's Motions to Compel Arbitration will be granted.  The Millennium Defendants' Motion to Dismiss will be denied as moot.  The Court will stay the case during arbitration.  A separate Order will issue.

Dated: June 11, 2020                                                                 TREVOR N. McFADDEN, U.S.D.J.

20