**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JULIO LAMBOY RUIZ,**<br><br>　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>**MILLENNIUM SQUARE RESIDENTIAL**<br>**ASSOCIATION,** *et al.*,<br><br>　　　　　　　Defendants. | Case No. 1:19-cv-03765 (TNM) |

## MEMORANDUM OPINION

In 2019, condensation on pipes caused water damage to a condo unit owned by Plaintiff
Julio Lamboy Ruiz.  He sued an adjacent hotel and various associations that represent
commercial and residential unit owners in the building.  Ruiz argued that all Defendants had
duties to maintain and repair the pipes and that their failure to do so caused the resulting
damages.

After briefing from Ruiz and the original defendants, the Court ordered arbitration over
his claims.  Before that could begin, Ruiz sought to add Defendants.  After another round of
briefing, the Court dismissed the new parties because Ruiz had failed to name them properly.

Now, Ruiz names those parties in an amended Complaint.  *See* Second Am. Compl.
(SAC), ECF No. 56.  In a third round of briefing, the new parties move to dismiss that Complaint
against them.  Some of the original Defendants previously ordered to arbitrate also move to
dismiss.  Because the original Defendants have not undergone the required arbitration, the Court
will deny their motion.  But for the new Defendants, the Court holds that Ruiz has not stated a
claim against them.  The Court thus will grant their motions to dismiss.

## I.

Ruiz owns a unit within the Millennium Square condominium project (the Condominium) in Washington, D.C.  *See* SAC ¶¶ 2–3.  Millennium Square is a mixed-use building, with residential and commercial units.  *See id.* ¶ 5.  Unit owners have organized themselves into a bevy of associations.  The Millennium Square Residential Association comprises the owners of residential units.  *See id.* ¶ 6.  The owners of the commercial units have likewise formed their own association, called the Millennium Square Commercial Association. *See id.* ¶ 7.  Aside from these unique associations, all unit owners, either of residential or commercial units, are members of the Millennium Square Unit Owners Association.  *See id.* ¶ 12.  The Court refers to the group of associations as the Association Defendants.  Specific to the Commercial Association, three companies are its members:  Millennium Washington Commercial Trustee, LLC; Hotel I TB, LLC; and MPE Hotel I, LLC (collectively, the LLC Defendants).  *See id.* 8–11.  Finally, among the commercial units is a facility operated by The Ritz-Carlton Hotel Company, LLC.  *See id.* ¶ 14.  Ritz-Carlton is not a member of the Commercial Association.

Now to the facts.  The top floor of Ruiz's unit is next to the Condominium's mechanical facilities room.  *See id.* ¶ 18.  Ruiz alleges that in May 2019 chilled water equipment in that room entered a "blowdown or flushing mode," causing the room's floor drain to overflow.  *Id.* ¶ 19. This overflow pushed 20–30 gallons of water into a unit near Ruiz's.  *See id.*

A few days later, Ruiz discovered mold and water intrusion in his unit.  *See id.* ¶ 20. Over the next two months, portions of the unit's ceilings and walls "were removed" for inspection of the damage.  *Id.* ¶¶ 21–24.  The insulation around some pipes "was heavily

waterlogged."  *Id.* ¶ 22.  "[E]xcessive condensation of the" pipes had first soaked the insulation and then the unit's ceiling and walls.  *Id.* ¶ 24.

Ruiz alleges that the water caused more than $575,000 of damage and that he has been unable to live there since June 2019.  *See id.* ¶ 34.  He claims that Defendants caused these damages through the "erroneous operation of the chilled water system . . . and/or [ ] faulty insulation and/or faulty installation and/or maintenance of the insulation and/or piping."  *Id.* ¶ 25.

Ruiz suggests that the Condominium Bylaws obligate the Association Defendants to maintain the chilled water systems, insulation, and pipes.  The Bylaws "govern the respective rights and obligations" between Ruiz and the Association Defendants, *id.* ¶ 26, and allocate responsibility for the "maintenance, repair, and replacement" of various Condominium elements, *id.* ¶ 27.  Specifically, the Unit Owners Association is responsible for the "General Common Elements," the Residential Association is responsible for the "Residential Limited Common Elements," and the Commercial Association is responsible for the "Commercial Limited Common Elements."  *Id.*  Despite investigation, Ruiz does not know which one covers the pipes and water equipment.  *See id.* ¶ 30.  Finally, Ruiz also alleges that Ritz-Carlton assumed certain maintenance and repair responsibilities that require it "to maintain, repair, and replace" certain facilities, including the pipes.  *Id.* ¶ 31.

Ruiz originally sued the Association Defendants for violating the D.C. Consumer Protection Procedures Act (CPPA), breaching the Bylaws, breaching the implied duty of good faith and fair dealing, and negligence.  *See* Am. Compl. ¶¶ 31–53, ECF No. 18.  He also sued Ritz-Carlton for negligence.  *See id.* ¶¶ 48–53.

At issue now is Ruiz's third Complaint in this case.  The parties have already undergone two rounds of motion-to-dismiss briefing.  In June 2020, the Court denied Ritz-Carlton's motion

to dismiss the claim against it and instead stayed the case while all parties, including the Association Defendants, entered arbitration. *See generally* Mem. Opn., ECF No. 28. The Court lifted the stay to allow Ruiz to add the LLC Defendants. *See* Min. Order, Nov. 18, 2020. The Court then granted motions by the LLC Defendants to dismiss the Amended Complaint because Ruiz "had not named" them in that Complaint. Mem. Order at 2, ECF No. 55.[1] Ruiz could, however, file a new Complaint if he wished. *See id.*

Ruiz has done so. *See* SAC. Ruiz's claims are the same as before—CPPA, breach of the Bylaws, breach of the implied duty of good faith and fair dealing, and negligence—except he has added the LLC Defendants for all claims. *See id.* Ritz-Carlton has filed an Answer. *See* Answer, ECF No. 58. The Court now considers Rule 12(b)(6) motions from the Association Defendants and the LLC Defendants.[2] *See* Mot. of Ass'n Defs. to Dismiss, ECF No. 59 (Ass'n MTD); Mot. to Dismiss by Defs. Hotel I TB, LLC and MPE Hotel I, LLC to Dismiss, ECF No. 60-2 (Hotel MTD); Mot. to Dismiss by Millennium Washington Commercial Trust, ECF No. 61 (Trust MTD).

## II.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017) (cleaned up). A plaintiff must plead

---

[1] All page citations refer to the pagination generated by the Court's CM/ECF system and all exhibit numbers refer to the numbered attachments to the CM/ECF filings.

[2] This Court has diversity jurisdiction over this dispute under 28 U.S.C. § 1332. Ruiz is a citizen of North Carolina. *See* SAC ¶ 1. None of the Defendants are incorporated there or have a principal place of business there. *See id.* ¶¶ 6–12, 14. And the amount in controversy exceeds $75,000. *See* Mem. Opn. at 4, ECF No. 28.

"factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In assessing plausibility, the Court may consider only "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [it] may take judicial notice."  *Hurd*, 864 F.3d at 678 (cleaned up).  The Court accepts the complaint's factual allegations as true and grants the plaintiff "all inferences that can be derived from the facts alleged."  *L. Xia v. Tillerson*, 865 F.3d 643, 649 (D.C. Cir. 2017) (cleaned up).  The Court need not, however, credit "a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678 (cleaned up).

### III.

### A.

Before reaching the merits, the Court addresses some preliminary matters.

Start with the Association Defendants.  Their motion to dismiss is untimely.  The Court has already ordered them to arbitrate with Ruiz the same claims brought in the current Complaint.  *See* Order, ECF No. 29.  Indeed, Ruiz's First Amended Complaint against the Association Defendants asserted the same claims as now.  *See* Am. Compl.  The Association Defendants could have moved then to dismiss those claims.  They instead sought arbitration.  *See* Mot. to Compel Arbitration or in the Alternative to Dismiss, ECF No. 19.  True, they also moved in the alternative to dismiss and made similar arguments as now.  Whether those arguments are persuasive is of no matter—the Association Defendants chose to seek arbitration.  And the Court ordered it.  *See* Mem. Opn. at 4 & n.4.  To allow and adjudicate another motion to dismiss would free the Association Defendants from the consequence of their decision.  The Court will not give them another bite at the apple.

Thus, the Court will deny the motion by the Association Defendants to dismiss Ruiz's Complaint. They must complete the arbitration already ordered by the Court. According to the case docket, the parties have not done so. *See* Joint Status Report, Dec. 8, 2020 (advising the Court that the original parties were "hopeful that a more robust arbitration agreement can be entered into once all parties appear in this action").

That leaves the LLC Defendants. Hotel I and MPE Hotel I assert that Ruiz fails to describe "what connection the Hotel I Defendants have to the building, the condominiums, the Bylaws, the [u]nit, the [p]ipes, or" the water damage. *See* Hotel MTD at 8. The Court disagrees. Ruiz has alleged that the LLC Defendants are members of the Commercial Association, which is unincorporated. *See* SAC ¶ 11. He also alleges that the Commercial Association is a party to the Bylaws—a "valid and enforceable contract," *id.* ¶ 43—and that the Commercial Association has some duty of maintenance and repair under those Bylaws, *see id.* ¶ 27.

Well-established law allows a plaintiff to prosecute an unincorporated association's alleged breach against its individual members. *See United Mine Workers of Am. v. Colo. Coal*, 259 U.S. 344, 385 (1922) (noting that at common law unincorporated associations "could only sue or be sued in the names of its members, and their liability had to be enforced against each member"); *see also* 7 C.J.S. *Associations* § 60 ("The members of an unincorporated association are not exempted from individual liability."). Here, that means Ruiz can sue Hotel I and MPE Hotel I as individual members. They do not argue otherwise in their reply.

There is one more pre-merits issue. Although the Complaint sues the Millennium Washington Commercial *Trustee*, the Millennium Washington Commercial *Trust* has moved to dismiss. The Trust argues that Ruiz cannot sue it under D.C. law because it is unincorporated. *See* Trust MTD at 13–14. But he does not sue the Trust; the Complaint names the "Millennium

Washington Commercial *Trustee*."  SAC at 1 (emphasis added); *see* Pl.'s Opp'n to Trust MTD at 6–7, ECF No. 65 (Pl.'s Trust Opp'n).  Again, well-established common law requires "any suits involving the trust [ ] be brought by or against the trustees."  76 Am. Jur. 2d Trusts § 601; *see Americold Realty Trust v. Conagra Foods, Inc.*, 577 U.S. 378, 383 (2016) (explaining that traditionally "legal proceedings involving a trust were brought by or against the trustees in their own name").  The Trust does not respond or otherwise object to this argument in its reply.  Ruiz has therefore properly sued the LLC Defendants for alleged breaches by the Commercial Association.  The Court now analyzes whether he has stated a claim against them.

**B.**

Ruiz first alleges that the LLC Defendants violated the D.C. Consumer Protection Procedures Act (CPPA or the Act).  *See* D.C. Code § 28-3905(k); SAC ¶¶ 35–41.  The CPPA penalizes the use of unfair or deceptive trade practices, but only when those practices form part of a consumer-merchant relationship.  *See Snowder v. District of Columbia*, 949 A.2d 590, 599 (D.C. 2008).  The Act defines a "consumer" in relevant part as a person who "does or would purchase, lease (as lessee), or receive consumer goods or services."  D.C. Code § 28-3901(a)(2).  And a "merchant" is an entity "who in the ordinary course of business does or would sell, lease (to), or transfer . . . consumer goods or services" or "supply the goods or services which are or would be the subject matter of a trade practice."  *Id.* § 28-3901(a)(3).  Finally, the Act defines a "trade practice" as "any act which does or would create, alter, repair, furnish, make available, provide information about, or, directly or indirectly, solicit or offer for or effectuate a sale, lease[,] or transfer, of consumer goods or services."  *Id.* § 28-3901(a)(6).

Ruiz alleges that the LLC Defendants are merchants and that the maintenance, repair, and replacement of the facilities under their control is a provision of goods and services constituting

a trade practice.  *See* SAC ¶¶ 37, 39.  He also alleges that the LLC Defendants "misrepresented

material facts which had a tendency to mislead . . . related to the maintenance, repair[,] and

replacement of" the water equipment.  SAC ¶ 36; *see* D.C. Code § 28-3904(e) (including in

"unfair or deceptive trade practice" a "misrepresent[ation] as to a material fact which has a

tendency to mislead").

Ruiz's CPPA claim fails on four levels.  *First*, he has not alleged that he is a "consumer."

He never says that he "purchase[d]" or "lease[d]" his unit.  D.C. Code § 28-9301(a)(2).  To be

sure, "[t]he CPPA applies to real estate transactions," Pl.'s Trust Opp'n at 8, but nowhere does

the Complaint say that Ruiz entered into any transaction for his unit.  He might have inherited

it—the Complaint simply does not specify.

*Second*, Ruiz has not alleged that the LLC Defendants are "merchants."  Merchants must

supply consumer goods and services "in the ordinary course" of their business.  D.C. Code § 28-

3901(a)(3).  The Complaint includes no allegations about the ordinary course of the LLCs'

businesses.  At most, Ruiz names the LLC Defendants as "owners of the commercial units in the

Condominium."  SAC ¶ 7.  Ownership of those units says nothing about the LLC Defendants'

ordinary course of business.  They might simply manage those properties, a task unrelated to the

provision of consumer goods and services.  Again, the Complaint does not say.

*Third*, the repair and maintenance services at issue do not qualify as *consumer* goods and

services.  All relevant CPPA definitions include that term, which means good or services that a

person would purchase, lease, or receive "and normally use for personal, household, or family

purposes."  D.C. Code § 28-3901(a)(2)(B)(i).  As defined in the Complaint, the LLC Defendants

could not provide such services.  The equipment at issue resides in a mechanical facilities room

that is "[a]djacent to" Ruiz's unit, not inside it.  SAC ¶ 18.  Ruiz thus would not enjoy any

maintenance of that equipment for his "personal" or "household" purposes.  D.C. Code § 28-3901(a)(2)(B)(i).  This is different from when a plumber fixes an in-unit water heater.  Only the household benefits there, but the entire Condominium, including non-household units, benefits from the maintenance services here.  Thus, even if the LLC Defendants, as part of their ordinary business, provide the maintenance services to these pipes, those are not *consumer* services.

*Fourth*, and in any event, Ruiz defines the LLC Defendants' unfair trade practice as a misrepresentation that they would abide by the Bylaws.  To make that theory stick, however, Ruiz would have to assert that the LLC Defendants, when they agreed to the Bylaws, intended to break them.  *See Attias v. CareFirst, Inc.*, 365 F. Supp. 3d 1, 26 (D.D.C. 2019).  As another judge in this district has concluded, punishing an intentional breach of contract under the CPPA would "substantially revise[ ] the District's common law of contract."  *Slinski v. Bank of Am., N.A.*, 981 F. Supp. 2d 19, 36 (D.D.C. 2013).

The District allows punitive damages for intentional contractual breaches only when "the breaching party's conduct assumes the character of a willful tort."  *Allen v. Yates*, 870 A.2d 39, 49 (D.C. 2005) (cleaned up).  The D.C. Court of Appeals has "repeatedly reaffirmed" that rule.  *Slinski*, 981 F. Supp. 2d at 36.  Allowing the CPPA's "panoply of strong remedies," including punitive damages, for an intentional breach would flout that rule.  *Id.* at 35 (cleaned up).  The Court thus holds that an intentional breach of contract is not cognizable under the CPPA.  *Accord Attias*, 365 F. Supp. 3d at 26; *see also Kelleher v. Dream Catcher, LLC*, No. 16-cv-2092 (APM), 2019 WL 3458459 at *8 (D.D.C. July 31, 2019) ("Plaintiff cites no authority for the proposition that run-of-the-mill breaches of contract are actionable under the CPPA.").

Ruiz therefore fails to state a claim under the CPPA.  The Court will dismiss Count I against the LLC Defendants.[3]

## C.

Ruiz next alleges in Count II that the LLC violated their contractual duties as found in the Bylaws.  The Bylaws provide that "the Commercial Association shall be responsible for the maintenance, repair[,] and replacement of all of the Commercial Limited Common Elements."[4] Bylaws § 15.5(a), SAC Ex. 1 at 93, ECF No. 56-1.[5]  Any repairs "shall be performed expeditiously if the failure to do so would be detrimental to the Residential Section."  *Id.*

The LLC Defendants respond with another provision of the Bylaws, § 13.11(b), which says in relevant part

> The Commercial Association *shall not be liable* . . . for injury or damage to person or property caused by the elements or by the Unit owner of any Commercial Unit(s), or any other person, or resulting from electricity, water, snow or ice which may leak or flow from . . . *any pipe*, drain, conduit, appliance[,] or equipment.

SAC Ex. 1 at 84–85 (emphases added).  The LLC Defendants assert that this provision precludes their liability, as members of the Commercial Association, for any breach of the Bylaws.  *See* Trust MTD at 20.

The Court agrees that § 13.11(b) absolves the LLC Defendants of any liability for the water damage to Ruiz's unit.  Ruiz alleges that condensation "of the [p]ipes" soaked the

---

[3]  Dismissal of this claim means that Ruiz cannot recover attorney's fees under the CPPA.  *See* Pl.'s Hotel Opp'n at 13.

[4]   The Bylaws include similar provisions for the other Associations, but because the LLC Defendants are members of only the Commercial Association, the Court need not discuss those other provisions.  And because this Opinion discusses only the LLC Defendants' motions, the Court will assume for now that the pipes are Commercial Limited Common Elements.

[5]  Because Ruiz attaches a copy of the Bylaws to his Complaint, the Court may rely on them at the pleading stage.  *See Hurd*, 864 F.3d at 678.

insulation on the outside of the pipes.  SAC ¶ 24.  So the Complaint concerns damage "resulting from" water.  Bylaws § 13.11(b).  And the water came "*from* a pipe."  *Id.*  The word "from" suggests a "source" or "cause."  Am. Heritage Dictionary 339 (3d ed. 1994); *cf. Cnty of Maui, Haw. v. Haw. Wildlife Fund.*, 140 S. Ct. 1462, 1473–74 (2020) (interpreting "from" in a statute to connote a point of origin).  Ruiz argues no origin of the water other than the pipes.  *See* Pl.'s Opp'n to Ass'n Defs. MTD at 8, ECF No. 63 (Pl.'s Ass'n Opp'n) ("Plaintiff is alleging that condensation *from the [p]ipes* caused damage . . . .") (emphasis added).[6]  That water also flowed from those pipes in that it moved from the pipes to the insulation to the surrounding ceilings and walls.  *See* SAC ¶ 24.

Ruiz responds that "a leak is not alleged here."  Pl.'s Ass'n Opp'n at 7.  True, but the Bylaws cover any "flow" of water, leak or otherwise.  Bylaws § 13.11(b).  And according to his Complaint, water originating at the pipes moved into surrounding areas, causing "damage to" his property.  *Id.*  Thus, under the express terms of the Bylaws, the LLC Defendants are not liable for that damage.

That the Bylaws allocate maintenance responsibilities to the LLC Defendants does not require a different conclusion.  The D.C.'s high court has spoken definitively on this point.  In *D'Ambrosio v. Colonnade Council of Unit Owners*, 717 A.2d 356 (D.C. 1998), a condo owner sued the building's management corporation and owners' association when a pipe burst behind his wall.  As here, the condo bylaws in *D'Ambrosio* allocated maintenance responsibilities to defendants for the offending pipe.  *See id.* at 359.  Another bylaw, again like this case, held the

---

[6]  The Court cites Ruiz's arguments against the Association Defendants here because he incorporates those arguments in his brief opposing the Trust's reliance on the liability provisions. *See* Pl.'s Trust Opp'n at 9.

management corporation not liable "for injury or damage to person or property caused . . . from any pipe, drain, conduit, appliance, or equipment." *Id.* at 357.

The court determined that the maintenance provisions did not "in any way modify or limit" the provision absolving the management corporation of responsibility for damages from any pipe. *Id.* at 359. So too here. "The former provision deals with maintenance responsibilities; the latter provision is a matter of financial risk allocation." *Id.* The "unambiguous language" of the Bylaws means that Ruiz cannot recover from the LLC Defendants for the water damage to his unit. *Id.*; *see also Baker v. Chrissy Condo. Ass'n*, 251 A.3d 301, 306 (D.C. 2021) (reaching the same conclusion under a comparable liability provision for water damage from a foundation wall).

Ruiz maintains, however, that he suffered damages beyond those to his property. He asserts that he "has been unable to reside in the unit" since June 2019, SAC ¶ 34, and "has been paying his costs and association fees" during that time, Pl.'s Ass'n Opp'n at 8. According to him, these consequential damages stem from the LLC Defendants' breach of their contractual duty to repair the pipes. *See id.*

The LLC Defendants respond that Ruiz has not adequately alleged these consequential damages. The Court disagrees. The Complaint alleges that Ruiz "suffered substantial damages[ ] and *anticipates* suffering additional damages." SAC ¶ 33 (emphasis added). And the Court can reasonably infer that he cannot reside in the unit because of the water damage. Those statements thus support an allegation for consequential damages based on an alleged failure of the contractual duty to repair and maintain the pipes.

The LLC Defendants again rely on the liability provisions, arguing that they preclude any attempt by Ruiz to seek consequential damages. The D.C. Court of Appeals rejected a similar

argument.  In *Baker v. Chrissy Condominium Association*, 251 A.3d 301 (D.C. 2021), condo

bylaws assigned maintenance responsibility to the condominium association for all Common

Elements.  *See id.* at 306 n.16.  The owner of a unit experienced a leak in her foundation wall.

*See id.* at 303.  All agreed it was a common element.  *See id.* at 306 n.14.  She informed the

association, but it took no action.  *See id.* at 303.  Four months later, she commissioned a

structural evaluation and multiple waterproofing estimates of the wall.  *See id.*  Each report

recommended repairs, and she forwarded those to the association.  *See id.*  Still, it did nothing.

*See id.*  Finally, the owner sued, alleging that the association's failure to repair the wall made it

impossible for her to rent, sell, or occupy the unit.  *See id.* at 303–04.

    The court first concluded that another bylaw provision holding the association not

responsible for property damage "from any portion of the Common Elements" prevented any

recovery for the water damage to the unit.  *Id.* at 306.  But on her claims "for economic injury

related to, but separate from, the initial water damage," *id.* at 307, the court rejected the

association's argument that these claims merely reclassified the initial water damages, *see id.* at

309.  The owner had alleged that "by the Association failing to act promptly to correct the issue,

the Premises ha[d] sustained more damage than it would have, had the problem been corrected

earlier."  *Id.* at 309 n.32 (quoting the complaint).  Thus, she alleged "ongoing economic loss

allegedly attributable to the Association's inaction" beyond the cleanup for water damages.  *Id.*

at 309.  The court found that because the association had a "legal duty" under the bylaws to

maintain, repair, and replace common elements, *id.*, the owner could sue for a breach of that duty

and for resulting damages beyond "the initial water leaks," *id.* at 310.

    Applying *Baker* here, Ruiz can sue the LLC Defendants for any consequential damages

resulting from their alleged failure to repair the pipes.  In his briefs, he makes an argument much

like the one made by the owner in *Baker*.  He says the LLC Defendants knew in June 2019 about the water damage "but took no corrective steps to cure these known defects for at least two months," causing "additional damage" beyond the "initial damage from the condensation."  Pl.'s Ass'n Opp'n at 8.  According to *Baker*, Ruiz's argument is permissible.

The problem is that his Complaint does not include that allegation.  The Complaint says only that Ruiz discovered mold and water intrusion in June 2019.  *See* SAC ¶ 20.  Without more, the Court cannot reasonably infer that the LLC Defendants knew of his discovery.  Thus, the Complaint does not allege that the LLC Defendants knew about the damages in June 2019.  Without that knowledge, the LLC Defendants could not have "cure[d] these known defects" or "conduct[ed] an investigation" to learn more about what had caused them.  Pl.'s Ass'n Opp'n at 11.

The Complaint then says that ceilings and walls "were opened" and "were removed" in late July to assess the damage.  SAC ¶¶ 21, 23, 34.  The use of passive voice implies that someone other than Ruiz took those actions, but it gives no hint as to who did so.  The Court cannot therefore say that the LLC Defendants learned in late July about the water damage.  And because the Complaint also does not support Ruiz's allegation that they knew in June about the damage, the Complaint alleges no facts that the LLC Defendants *ever* knew about the damage.

That is a marked difference from *Baker*, where the plaintiff alleged that the association had "timely notice" of the foundation leak.  *Baker*, 251 A.3d at 306.  Ruiz's Complaint has no details about notice, timely or otherwise, to the LLC Defendants.  And without those details, Ruiz cannot allege that the LLC Defendants failed to act "expeditiously" to repair the problematic pipes.  Bylaws § 15.5(a).

In sum, the Court will dismiss Count II against the LLC Defendants.  The liability provisions of the Bylaws preclude compensation for the initial water damage to Ruiz's unit.  And although Ruiz can seek consequential damages, the Complaint fails to allege facts sufficient to show that the LLC Defendants breached their alleged duties and caused those damages.

**D.**

In Count III, Ruiz alleges that the LLC Defendants breached the implied contractual duty of good faith and fair dealing.  *See* SAC ¶¶ 47–51.  All contracts in the District "contain an implied duty of good faith and fair dealing."  *Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308, 321 (D.C. 2008) (cleaned up).  That duty means neither party may destroy or injure their counterparty's right "to receive the fruits of that contract."  *Id.* (cleaned up).  Nor may a party "evade the spirit of the contract, willfully render imperfect performance, or interfere with performance by the other party."  *Koker v. Aurora Loan Serv., LLC*, 915 F. Supp. 2d 51, 65 (D.D.C. 2013) (cleaned up).  To state a claim for breach of this implied duty, Ruiz must "allege either bad faith or conduct that is arbitrary and capricious."  *Wright v. Howard Univ.*, 60 A.3d 749, 754 (D.C. 2013).

He does neither.  Instead, he says that the LLC Defendants failed to act "in a manner consistent with the expectations under the Bylaws."  SAC ¶ 50.  That allegation merely restates Count II—that the LLC Defendants breached the contract.  Ruiz nowhere accuses the LLC Defendants of a "corrupt motive" or a "malevolent intent."  *Himmelstein v. Comcast of the Dist., LLC*, 908 F. Supp. 2d 49, 54 (D.D.C. 2012).  And recall that the Complaint says hardly anything about the LLC Defendants' actions, much less whether they were arbitrary and capricious.  Such "vague" and "conclusory allegations" do not suffice to state a violation of the implied duty of good faith and fair dealing.  *Koker*, 915 F. Supp. 2d at 66.  The Court will dismiss Count III.

**E.**

Finally, Ruiz accuses the LLC Defendants of negligence in Count IV.  He alleges that they owed a duty to maintain and repair the pipes "in a reasonable manner to ensure that the [u]nit was not damaged."  SAC ¶ 53.  The LLC Defendants respond that this negligence claim is duplicative of the breach of contract claim and that the two cannot coexist.

Under D.C. law, for a plaintiff to recover in tort for conduct that also breaches a contract, "the tort must exist in its own right independent of the contract, and any duty upon which the tort is based must flow from considerations other than the contractual relationship." *Choharis v. State Farm Fire and Cas. Co.*, 961 A.2d 1080, 1089 (D.C. 2008).  Put another way, the tort claim must have "an independent basis for the duty allegedly breached." *Compton v. Kappa Alpha Sorority, Inc.*, 64 F. Supp. 3d 1, 20 (D.D.C. 2014).

Here, the Bylaws—which are a "valid and enforceable contract"—create the LLC Defendants' alleged duty to maintain and repair the pipes.  SAC ¶ 43.  That is the only duty mentioned.  The Complaint includes no "additional facts [n]or identif[ies] a separate duty" beyond the Bylaws' duty to maintain and repair.  *Attias*, 365 F. Supp. 3d at 18.  In essence, the Complaint seeks to enforce the Bylaws through the tort of negligence.  This it cannot do.  *See Compton*, 64 F. Supp. 3d at 20 (dismissing negligence claim that the defendant breached Bylaws when plaintiffs provided no "independent basis for the [ ] duty to comply" outside the Bylaws); *see also KBI Transp. Servs. v. Med. Transp. Mgmt., Inc.*, 679 F. Supp. 2d 104, 109 (D.D.C. 2010) (dismissing negligence claim for failure to "identify any breached duty distinct from an obligation to adhere to the contract").

Ruiz responds that the LLC Defendants are landowners with a "duty of common prudence" to maintain their property—which he says is the pipes at issue—in a way that prevents injury to a neighbor's property. *See* Pl.'s Hotel Opp'n at 10 (quoting *Brown v. Consol. Rail. Corp.*, 717 A.2d 309, 316 (D.C. 1998)). Ruiz then repeats his claim that the LLC Defendants knew about the water damage and did nothing.

This argument suffers from three deficiencies. *First*, the "landowner" of the condominium is 2200 M Street, LLC. *See* Bylaws § 1.5(n), SAC Ex. 1 at 8. If the alleged duty applies to a landowner, then the LLC Defendants are not subject to it according to the express terms of the Bylaws. *Second*, even if the LLC Defendants own the pipes,[7] recall that the Complaint's factual allegations support no inference that the LLC Defendants knew about the condition of the pipes. As with his breach of contract claim, Ruiz thus pleads no facts showing that the LLC Defendants acted without "common prudence," as required by the landowner duty. *See* Pl.'s Hotel Opp'n at 10. And *third*, Ruiz alleges this duty for the first time in his brief. "[I]t is axiomatic that a plaintiff may not amend the complaint through facts first alleged in an opposition brief." *Briscoe v. Costco Wholesale Corp.*, 61 F. Supp. 3d 78, 90 (D.D.C. 2014). Ruiz could have mentioned the landowner duty sooner. Indeed, he ably alleges that Ritz-Carlton had violated a duty "independent of the Bylaws." SAC ¶ 54. But he includes no similar allegation for the LLC Defendants. He cannot use his brief to correct that mistake.

---

[7]  Under the Bylaws, the LLC Defendants could own the pipes if they are Commercial Limited Common Elements. Recall that the LLC Defendants are members of the Commercial Association, which comprises commercial unit owners. Each commercial unit owner apparently owns some percentage of those elements. *See* Bylaws § 1.5(c), SAC Ex. A at 1.

Because Ruiz fails to allege a "tort duty independent of" the contractual duty found in the Bylaws, Count IV is duplicative of his breach of contract claim. *Attias*, 365 F. Supp. 3d at 19. Thus, the Court will dismiss Count IV.[8]

### IV.

For these reasons, the LLC Defendants' Motions to Dismiss will be granted. That dismissal will be with prejudice as to the LLC Defendants. The Court may dismiss a complaint with prejudice when a plaintiff shows a "repeated failure to cure deficiencies." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (cleaned up). Over the Trust's objection, the Court already gave Ruiz another chance to "clearly name the correct defendants and state their relationship to the wrongs he alleges." Mem. Order at 3. Ruiz names the LLC Defendants but does nothing more. Indeed, multiple Defendants have challenged the other deficiencies in his complaint during the previous two rounds of 12(b)(6) briefing. That some of those Defendants chose arbitration does not change that Ruiz had notice of their arguments, most of which the LLC Defendants now assert. He failed to "rectify th[ose] deficiencies at [his] peril." *Hajjar-Nejad v. George Washington Univ.*, 873 F. Supp. 2d 1, 12 (D.D.C. 2012) (cleaned up). And Ruiz notably does not ask for another chance to amend his Complaint. The Court will not grant him one.

A separate Order will issue.

Dated: February 1, 2022                          _____
                                                          TREVOR N. McFADDEN, U.S.D.J.

---

[8]  The parties contest the applicability of the economic loss doctrine to Ruiz's consequential damages. The doctrine "prohibits recovery for purely economic damages in *tort*." *Cmnwlth Land Title Ins. Co. v. KCI Techs.*, *Inc.*, 922 F.3d 459, 468 (D.C. Cir. 2019) (emphasis added). After dismissing Ruiz's only tort claim, the Court need not consider the economic loss doctrine.